RECEIVED
IN LAKE CHARLES, LA
NOV - 3 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:11-CR-00061-001 |
| VS. | : | JUDGE MINALDI |
| WARRICK DWAYNE CASTILLE | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are several objections filed by the defendant to the Presentence Report ("PSR") prepared by the Probation Department.

The defendant's first four objections are factual and do not require a ruling by the court.

In his fifth objection the defendant objects to ¶¶ 34, 36 and 80. The defendant argues that his criminal history category substantially over-represents the seriousness of his criminal history or the likelihood that he will commit other crimes. While admitting that he is a career offender, Castille submits that he is entitled to a departure to criminal history category V, with a guideline range of 168-210 months.

Probation responds that Castille's criminal history category does not over-represent the seriousness of his criminal record as he would have been a category VI even if he had not been classified as a career offender.

Considering the defendant's lengthy criminal history, including arrests for drugs and violent behavior, this court finds that the criminal history category of VI does not over-represent this defendant's history. A downward departure is not warranted.

In the defendant's Sentencing Memorandum he, in essence, urges an additional objection that Castille was assessed four points in ¶26, when he should have been assessed only two points. Castille argues that he used an air pistol and USSG § 1B1.1 defines a weapon that uses air or carbon dioxide pressure to expel a projectile is a "dangerous weapon," but not a firearm.[1] In ¶26, however, pursuant to USSG §2B3.1(b)(2)(D),[2] Probation assessed four points because a dangerous weapon was used. Had it been a firearm pursuant to USSG 2B3.1 (b)(2), he would have been assessed 6 levels.

The fact remains that Castille held the weapon to the head of a victim during the robbery, acting like it was a real firearm, and the victims of this crime thought it was a real firearm. It is well-established that objects which appear to be dangerous weapons should be treated for sentencing purposes as if they actually were dangerous weapons. *See United States v. Vincent*, 121 F.3d 1451, 1455 (11th Cir.1997) (finding that defendant who pressed an unknown object into victim's side and intended that the object appear as a dangerous weapon is subject to an enhancement under section 2B3.1(b)(2)(E)). The four levels in ¶26 were assessed because a dangerous weapon was "otherwise used." The Guidelines define "otherwise used" as conduct that "[does] not amount to the discharge

---

[1] USSG 2B3.1, application note 1, refers to the definition of a dangerous weapon in 1B1.1.

[2] USSG, § 2B3.1(2) states: (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

of a firearm but [is] more than brandishing...." U.S.S.G. § 1B1.1 cmt. n. 1(I). The Guidelines definition of "brandish" is effectively identical to that in § 924(c)(4). *United States v. Lettiere*, 640 F.3d 1271, 1275 (9th Cir. 2011). A person may "brandish" a weapon to "advise" those concerned that he possesses the general ability to do violence, and that violence is imminently or immediately available.... Altering this general display of weaponry by [for instance] specifically leveling a cocked firearm at the head or body of a bank teller or customer, ordering them to move or be quiet according to one's direction, is a cessation of "brandishing" and the commencement of "otherwise used."*United States v. LaFortune*, 192 F.3d 157, 161-62 (1st Cir.1999). Similarly, in *United States v. Orr*, 312 F.3d 141, 143 (3d Cir.2002), the court held that "pointing a gun at the head of the assistant manager and ordering her to empty money into a garbage bag was a 'specific threat' directed at her and was precisely the type of conduct which satisfies the 'otherwise used' requirement." 312 F.3d at 145. The court added that "[n]either the guidelines nor the caselaw requires infliction of the violent physical contact ... or a verbalized threat to harm the victim in order to constitute 'otherwise used.' " *Id.*

Castille's case does not fit anywhere other than within the parameters of "otherwise used," as that phrase has been defined in the bank robbery context. Therefore, the four-point enhancement is correct and this sentence will not be adjusted. The sentence, as set forth in the PSR is sufficient to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.

In light of the Guidelines' clear commentary and prior precedent with respect to the treatment of objects which appear to be dangerous under U.S.S.G. § 2B3.1(b)(2), this court sees no reason why a defendant who "otherwise use[s]" an object which appears to be a dangerous weapon during an attempted robbery would not be subject to a four-level enhancement under U.S.S.G. §

3

2B3.1(b)(2)(D); *United States v. Miller*, 206 F.3d 1051, 1052 -1053 (11th Cir. 2000).

Lake Charles, Louisiana, this 3 day of ~~October~~ November, 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE